Good morning. Okay. You represent? Barry Green for the school district, Your Honor. Yeah. Okay. May it please the Court, this is Daniel Gonzalez, my colleague who put me on the case. We brought this case up on appeal because it involved an important issue in the school law community on the standard of a claim under the IDEA. The administrative law judge found that the claim can be brought based on a new or should have known that a child was in need of an assessment, then there needs to be, there's a claim that can be brought. And we submit that that is contrary to the statute and the regulations and is unprecedented. That's the only issue in front of us today, correct? That's correct, Your Honor. And when you suggest that it's unprecedented, are you saying unprecedented in our circuit or unprecedented altogether? To my knowledge, Your Honor, there is not a case that's come out and said that you have a, you can bring an IDEA claim based on a contention that a child should have been found eligible earlier than the school district knew the child and proposed or refused to act on that. What do you say about M.C. on behalf of J.C. v. The Central Regional School of Third Circuit's 1996 case, 81-Fed-3-389? It seemed to me that in that particular case, the Third Circuit was looking at this exact situation, and you're suggesting that it's unprecedented, but when I read the Third Circuit language in that particular situation, they talk about the Second Circuit has conditioned the award of compulsory education on the presence of a gross deviation of the right to free and appropriate education, and then they say, and they even differentiate the Second Circuit, but their language there suggests that when the NIEP fails to confer some, more good children to a student, that student has been deprived of the appropriate education guaranteed by the IDEA. It seems clear, therefore, that the right to compensatory education should accrue from the point that the school district knows or should know of the failure. Well, it's, I don't have that case, Your Honor, because I'm not sure if it was cited in the case, but I remember when you said it's totally outside the realm, I started having my law clerks go, because we're really interpreting statutes here, and there, the Third Circuit's really talking about know or should have known. It sounds like, Your Honor, and I can't say without reading it carefully, it sounds like what happened is there was an IEP. Yes. And then there was a crystallized dispute. I say this should be the services. The parent says that should be the services. There's then a dispute. And then in shaping when the services should be, you know, the remedy, they then look back to when it, they knew or should have known. But that doesn't sound like in that case they addressed whether a claim could accrue before there was an IEP proposed. In this case, there was, what they're saying is that there was later an IEP proposed in this case in 2000, the end of, actually the beginning of 2005, and we're not in any way debating that they can't bring a claim based on that IEP. Now, as I read the D.J.'s decision and as I read the ALJ's decision in these particular matters, it seems to me that they're really getting their language in this particular matter from the California Education Code, sections 56,000, 56-100, I, 56-128, where it says that the Child Find Program requires local school districts to identify disabled by actively and systematically seeking out all individuals with exceptional needs. And they're suggesting then that the obligation then covers this particular situation. If that is the California education approach, that says that the school district has an obligation to do that. And if that obligation is not fulfilled, then somebody ought to do something about it. No, we're not debating that there is a child find obligation, which is the obligation to go out into the community, try to locate children who are disabled, and try to serve them. The issue is what is the scope of a due process hearing? And 56-501 is the Ed Code section that governs that, and it was addressed by this Court in the Weiner v. Manhattan Beach case. And it circumscribes what the nature of it, because there's actually three ways one can complain about an IDEA violation. There's the due process hearing procedures. There's the so-called compliance complaint procedures. That's in 300.151 to 153. And then there's a claim that States are not complying, and you can yank the Federal funding, and that's under 1416 and 300.604, et cetera, et cetera. So what we're saying is that the due process hearing procedures do not cover this claim that you should have earlier found someone eligible. And I think it's actually supported, Your Honor. If you look at 20 U.S.C. 1415F3B, it talks about, quote, subject of hearing. And in that, and that talks about the due process hearing, it says the subject of due process hearing cannot include anything that was not contained in the B7A notice. And that B7A notice talks about a proposal or refusal to act. So it's very clear that the Congress intended for the due process hearing to include just that narrow scope. And, again, that was supported by 56501 and the Weiner case. So then how does the student enforce the school districts? I mean, in the statutes, as far as the California, I read you that particular regulation, and I can read you other regulations that come out of the Federal. How does the parent enforce this? I mean, what you're really saying, or it seems to me you're arguing, that unless the parent says something, the student gets nothing. I wouldn't go that far, Your Honor, because, remember, these are school officials, and, you know, they become school officials for a reason. They're not going out there to try to deprive children of anything. But if they do nothing, there's nothing the parent can do. No, the parent, well, there are many rights in society, for example, right, to welfare, social security, unemployment, where the government doesn't go out and say, you know, you have this right, you've got to come right away and take that right. There's responsibility for the citizens to avail themselves of many of the rights. And we're not in any way blaming a parent for not being as sophisticated as a school district. On the other hand, Your Honor, about 10 percent of all students in school districts are special ed. So Compton, for example, has a limited budget, 30,000 students, 3,000 special ed students. You're never going to have enough staff to go out and find every child exactly when, you know, they think that child might become eligible. They do their best they can. But all you're suggesting is that because the school district who's signing up to get all this money doesn't have the staff to do what they're signing up to get, that the parent can't do anything about it. No, you're not saying that, Your Honor. And I am saying they are doing that. They are going out into the community. And it's not a policy question for me to resolve, Your Honor. It's what did the Congress decide? Well, my worry is that what we're really suggesting in the district court decision and the ALJ decision is that we should read this statute broadly. And that because you have a duty defined and because we can read the statute that you do have the duty, that all of these other regulations are put in mind to enforce that duty as well as other duties. That's what they're really saying. Well, that is a reading, Your Honor. But I don't think that's a preferred reading, because why would there be a circumscribed scope of the due process hearing procedures laid out in 56501 and in addition in the regs and the CFRs? I mean, earlier I was listening to the arguments, Your Honor. You correctly noted that some issues are for Congress and some issues are to be construed. And here we submit that the regulations and the statutes support this narrower construction. Let me go one further. There's a regulation, 300.507. This is the filing of the due process complaint. It says a parent or a public agency may file a due process complaint on any of the matters prescribed in 503A1 and 2. Well, if I go to 503A1 and 2, one of those ways is proposed to initiate or change the identification. That would not be what we're in here. But if I go to 2, then I see refuses to initiate or change the identification. Now, in that, doesn't that suggest then, because we're talking about the filing of the due process complaint, doesn't that suggest that that's exactly, if you're refusing to initiate, that you ought to be subject then to the due process hearing? And that's what the school district refused to do. They did nothing. They refused to do what they had to do. Well, Your Honor, that is correct, that refusal is a basis for due process hearing. But that's not what the administrative law judge found. And that's not even what was argued below. They said it was we knew or should have known. And there's a difference between failure and refusal. And actually, and I was looking at this, in 20 U.S.C. 1414A1CII, Roman numeral 2, it uses the two terms fail and refuse in the same sentence. So this clearly Congress knew if they wanted to say fail, they could have said fail. But instead, they said refuse. And so there's a difference. And I can tell you as a practical matter, as a practitioner, the reason this has to go this way is there'd be unlimited number of claims that could be brought. Things have to come to the attention of the school district. They try. They go out and they find tons of kids who are disabled. They do their very best as public officials. Sometimes the parents come forward. And that's great. But if we have a system where it's like a negligence standard, which the courts have held is not applicable to non-disabled children. In Rowley, the Supreme Court said we're not going to come up with a standard of performance next year. Here, her teachers told the school counselors that she was like a stick of furniture. That her work was gibberish. That even in 10th grade, that she played with dolls and urinated on herself in class. And then the school district even referred her to a third-party counseling service, but did not assess or accommodate this child until specifically requested to do so. So it was just all out there for her. I mean, it seems like they had to be blind and cover their hands with their ears. Once they talked about this conduct you just described, as soon as they found out of that conduct, they actually referred her for a mental health assessment. That's what that Shields assessment was. And the fact that a child may be having problems like that does not mean that the child is necessarily learning disabled. It could be having social problems. And that's, in fact, what happened. It's not like the school district was ignoring the needs of the child. And the Congress has said, don't go ahead and find every child learning disabled just because there may be other issues. There's an obligation to provide the least restrictive environment. Well, anyway, I think competent school districts had a lot of problems for a long time, right? I think they've done very well in the last 10 years or so, I think. I don't know, but they've had a lot of problems over a long period of time. And at one time I think they were under the trusteeship of the state. Yeah. We've had these cases here. That's all I know. You don't have the first one representing a school district that's appeared before us. But, Joe, I want to address the ‑‑ this is not a case where ‑‑ and this was a motion for judgment on the pleadings. Okay. And so there's no finding that the district refused to act. If this court were to be inclined to make such a finding and change the standard from what the administrative law just said to be within the scope of the framework that we're arguing, that's fine. I mean, we'd prefer to have the result reversed. But the key issue in this case is to not have this open‑ended, new or should have known, negligent standard. It's going to cause mischief. It's going to create enormous burden for school districts out there. This case is published in the Lexis Reporters. It's got a lot of buzz in the school law community. And there's one point I wanted to add because I forgot about it. Maybe it'll wake them up. I don't know. This case ‑‑ this case does not involve direct federal regulation. This is a matter where the feds give money to the states. And so the argument by my learned opponent that one should read into the state framework this component of B6, we're saying that that wouldn't even make sense because 1415 says these are procedures that states are required to have. But Ed Code 56501 describes what those procedures are. And this Court in Weiner explained that that is the proper scope of jurisdiction. So I'd like to possibly save a minute or two for rebuttal. No, you've got 33 seconds. Can I save that? Thank you. Sure, yeah. We'll give you a little interest on it, too. I'm going to please the Court. To begin with, listening to counsel's presentation, one would think this is a brand-new statute and that I as a proponent of the parent and child under that statute am arguing for an expansive interpretation of school district liability. And the school district lawyer, naturally, is talking about holding back the floodgates and what to do with the parade of horribles that would be generated if the Court were to adopt the interpretation for which I'm arguing. But that's not the fact. This is a 35-year-old statute. And counsel is standing here and arguing, well, if it's interpreted this way, what will happen? Your Honors, it's been interpreted that way for 35 years. Forgive me more than the cases that I have in front of me, which are the one that we had from California that Judge Patel did and or the one that I now have in front of me that deals with this particular instance. Your Honor. I mean, we have a lot of cases in front of us that are dealing with instances where something's already been done by the school district or not done by the school district and somebody's fighting about the IEP or fighting about what happens in those particular instances. But I looked very hard to find a case which suggested, and therefore I came up with this Third Circuit case, which wasn't exactly but was at least talking about the same kind of anybody did anything in these particular matters, that the school district has an obligation which is something that can be enforced by the due process hearing. Your Honor, at pages 25 to 27 of our brief, we gave the court a laundry list. Well, frankly, I went through every one of those cases, and I didn't find one of them where it was this kind of an instance. Every time I was looking through your cases, I had a situation where the parent was either demanding the school district do something and they didn't, or the school district was doing something but the parent didn't like it. But I never had a situation where in this case the school district didn't do anything. And even when they did do something, the parent said, well, that's not a problem that you need to rectify. Now, Your Honor, I think the difficulty here, and I did say in the brief that these cases assume the argument that I'm making, because it is not, to my knowledge, come to an ever-before court where a school district has said, child find in and of itself does not afford jurisdiction to a hearing office or a Federal court to make a finding that the district didn't recognize a child's disabilities in a timely manner. I don't think, Your Honor, it's ever been argued in the past. I think it is that novel of a proposition, because I obviously looked, too, and I had a Third Circuit case. You're saying the reason it isn't before us is because no school district would have taken such an outlandish argument prior to this? That's part of the problem. I think so, Your Honor. I mean, because as Judge Matz, who is a respected district court judge, pointed out, if this interpretation is adopted, then what hindrance is there to school districts for just ignoring disabled children? I read what he said, and I thought about it. Perverse incentives. That was his phrase. Yes, that's what he was really talking about. I read it, and I thought about it. And again, I come to that same old point where I was on the last case. The unimaginable consequences that may happen or may not happen because of my decision shouldn't be something the court should be talking about. That should be Congress's situation. What I ought to be talking about is what does the statute say, where can I make it say what it says, and where does it say what it doesn't say? And that's why I had to look at the statutes. Indeed, Your Honor. But I would draw a distinction. I think the court is required to look at the totality of the statute, and it was said by the Supreme Court recently, it has various interlocking provisions which have to be interpreted as a whole to effectuate the purpose of the statute. I agree with that. So I look at 1412. And to me, 1412 is the general overall provision that says what we're supposed to do in this statute, generally talking about state eligibility, generally talking about what states ought to do. And then I look throughout the whole statute. I go to 1414, and I cannot find the particular code section which would allow me, in 1414, to suggest the school district has not done what it needs to do because 1414 would suggest that they can do something to bring about a hearing or the parent can do something to bring about a hearing, but nobody says anything about. And if nobody brings a hearing and the situation goes on for time and time, that automatically that makes the school district responsible. It doesn't say it explicitly, but it says it. Where? It says it in 1412 and 1415b6 read together. 1412 says school districts, there are certain things you have to do to get this money. 1412a and various subsections. Subsection 7, you have to evaluate children. Subsection 4, you have to have IEPs, et cetera. Subsection 3, I believe, you have to have a child fine system. All right. So there are all these obligations there. One of them is you have to adopt procedural safeguards such as are listed in 1415. We go over to 1415. We get to 1415b6. 1415b6 says, school state, you have to set up a hearing system so that any party can come into a hearing office, which in this case is the Office of Administrative Hearings, and present a claim relating to any matter concerning the identification, evaluation, individualized education program, or provision of a fate to a child. So you've got obligations in 1412. You've got the right to a hearing regarding any right, really, of the child in 1415b6. Now, the district's argument is, well, no, you don't, because there's this notice provision in b3 and b7. That's exactly what they argue. That's exactly what they argue. And they're taking, as Judge Maas said, a provision that imposes a duty on them to give notice to families of why you're not going to do something or why you're insisting on doing something, and they're making the jurisdiction of the hearing office and the jurisdiction of the right to jurisdiction of parents hinge on that because of the provisions of b7 that say, well, if you're going to do a complaint, it should include the following allegations. One of those allegations is you should set forth to the hearing office, the OIH in this State, what it is the district refused to do or proposed to do that you want to fight about. That's at most a pleading requirement. And there are two reasons, two ways I think I can demonstrate that to Your Honor. First of all, there is the provision of b8, which says that if a school district is served, 20 U.S.C. 1415b8, if a school district is served with a complaint and the school district hasn't yet given the notice that it's supposed to have given under b3, then within 10 days after it's served with the complaint, it better give that notice. So if there were no jurisdiction to initiate the complaint without a school district having formally proposed or refused to do something, b8 wouldn't make any sense. But what would make sense? If it's not b8, b8 says procedures that require the State educational agency develop a model form to assist the parents in filing a complaint and due process complaint notice in accordance with the paragraphs. That I'm wrong. But I'll find it very quickly, Your Honor. Go ahead, counsel. Aren't you essentially saying that the school district has an affirmative duty to find these kids, and that when they fail in doing so, there should be some due process liability? Is that what you're essentially saying? I'm not going entirely that far. Yes. But I'm not going entirely that far, because I accept the gloss the courts and hearing offices around the country have put on this obligation. And that's the amazing thing to me about the district's position in this case. If the district were to succeed in having child fine cases found to be there to be no jurisdiction for them, they would lose a defense almost, because the obligation as implied, as interpreted is, to have, it only accrues once a child, once a district has reason to believe there's a disability and to believe that special education, because not every disability triggers an entitlement to special education. There's 504. Isn't that what happened here, that facts concerning this child's disability were communicated to the district? They were screened at the district. The district had, the teachers were telling the counselors, the outside agency was telling the district, the counselors. Well, that isn't just exactly the facts. I mean, the honest truth is, if you look at the facts here, the first time where the parent made any idea about what they ought to do in this particular matter, the school district contacted her and she said she didn't want the student looked at. We don't know what that meant. I've read that. I understand that. I've read it. I'm just reading the facts. Yes. So the first time, really, where we've got anybody really saying we've got to do something is not until maybe a year before something was done. Now, when I said it was screened at the district, I meant it was, let me use a better metaphor than that, or I hope a more, a milder one. It was plain, it was hiding in plain sight. This child's problems were hardly subtle, as Judge Preggers had pointed out earlier. They couldn't have been missed. Counsel actually made a factual mistake and said that, well, disabled children are reckoned to be about 10% of the populace. That's true. But in Compton, and I just looked this up last night and it's not in the record, they have found about 7.5% of their children to be disabled. Why? There's something in the water in Compton that makes for less disability than in the rest of the state? I don't think so. So if I may return to Your Honor's point, I'm looking for the statute, the provision I was referring to. Let me, let me first, before I find that, give the second refutation of the argument that there's no jurisdiction. And that is in 1415C, 2. And that says that the complaint shall be deemed to be sufficient unless the district calls to the attention of the hearing officer in writing that the district believes the notice has not met the requirements of B7A. In other words, you've got what? Jurisdiction by waiver? Jurisdiction by default? There's a procedure. Should the district think the complaint is inadequate, they can do the equivalent of a Rule 12B6 motion. But if they don't, then there's jurisdiction? That would have to be the interpretation of the district. It makes no sense. Educators know that there are times when there are children in the classrooms that have a disability, and you can call it to the attention of the parent, and the parent can be in denial and say, no, no, no, my kid is fine. That's certainly true. Something they can grow out of. And that goes on frequently, doesn't it? Yes. It does. So what is Judge Matz's holding against? Judge Matz held that the, well, as far as concerns the disappeal, that the hearing officer had jurisdiction to entertain the child fine claim of the parent. The other section, Your Honor, that I miscited is 1415C2B. Response? Yes. Okay. One other thing, and my time is dwindling. The district has not attempted to make some arguments that I would have thought it would have made. It hasn't attempted to say, oh, no, those cases, it did somewhat. It tried to distinguish the court of appeal cases, but ignored all the district court cases and all the hearing office cases around the country. And I will freely concede that I've got dicta, because it's never come up that I know of. Well, my problem was that it does have dicta, and I'm trying to make it work. And so I'm reading all these statutes, and I'm thinking, okay, I'm going to have all these bright people standing here in front of me. I'm going to ask them the tough questions. But I'm having a tough time coming up with where to go for what you have to say. And that's why I'm asking you the question. Yes. And I hope I've given Your Honor a highway down the list to go on that. Start with 1412. That sends you to 1415B. That's complaints over any matter relating to the identification of the child. And there's nothing to say that it's limited to cases in which a district hasn't quietly sat there and done nothing, but only cases in which a district has explicitly refused to do something. And there's a section of the brief. Well, but it does say in 15B.3, written prior notice to parents of the child in accordance with subsection C1, whenever the local educational agency proposes to initiate a change or refuses to initiate a change, the identification, evaluation, provision of the free public. I mean, that's the only part that really pertains to this particular argument. It's the only part that pertains to the district's part of the argument. Well, or your argument. What part would you go under these types of procedures? Which one are you going to go under, B, type of procedure? Which one of these are you going to take if you're not going to go under 3? Well, the one Your Honor read is the district's obligation to give the parents a ready. Well, I understand. Where's the other procedures that should be instituted? Well. In B. B.6 is pretty explicit, Your Honor. And in this Court's decision in the Hacienda La Puente case, which is factually distinguishable, the Court nevertheless said that the B.6 provision was broad enough to subsume the set of facts that were before the Court there, which were an expulsion hearing. Are you going to argue, then, that if we're going to take B.6, that the most the district would have to answer for is that which is two years before the date the parent or public agency knew or should have known? No. It's going to be, at the most, two years from the date they filed the parent files a complaint. And I appreciate Your Honor bringing me back to that, because since this case was filed, when the case was filed, there was a three-year statute of limitations. Now there's a two-year statute of limitations. The district has two protections, a short statute of limitations, two years, and the fact that nothing accrues to it unless it is on notice and then has had a reasonable time after it's been on notice during which reasonable time it's done nothing. So it's just not going to happen as far as the other. Well, the purpose of the child fine provision is to see to it that the administrators do their job, that they seek out these children that need help and maybe contact the parents and see what they can do about it. It's utterly essential if the statute is going to work. When Congress first enacted this, it made findings. And those findings, which have been modified in the current version, were there are more than 8 million children with disabilities in this country today, more than half of them do not receive appropriate services that would enable them to have full equality of opportunity, and 1 million of them are excluded from school entirely. Let's fix it, said Congress. Let's end a national scandal, and let's do it with a broad, comprehensive, statutory procedure. To have an appropriate education, you have to be assessed and evaluated so that a school district can know what you need. To be assessed and evaluated, you have to be found. You have to be identified as possibly having a disability. Without child fine, the whole thing wouldn't work. And it works reasonably well. There aren't all these cases. I have never said, and I've been practicing this law for nine plus years, I have never said, gosh, school district, you found this kid eligible yesterday. Well, if he had these problems yesterday, he had them last week, or he had them last month, so I can really get you. It's never happened. Why would we do that? Why would we spin our wheels? Here's a child with a disability who at last is getting some help and is being recognized. If it's a flagrant case and it should have been, like this is, and it was as plain as the nose on one's face, then, yes, I might say, well, you should have, come on, there's nothing new today as compared to two years ago. So we're going to file a claim, and we're going to seek compensatory services, which is a very mild remedy. This child got 150 hours of compensatory education and an assessment done by a private assessor rather than the school district for all of this. The case law is clear that for compensatory education, that ALJ need not do it, parse it out on a one-to-one ratio. Let's say you should have had special education for two years. That would be five hours a day times, you know, however many school days there were, so therefore two trillion hours of special education. In the real world, it doesn't happen. How would this child have ever accessed those hours, life being what it is? So in conclusion, well, I think I probably already have concluded, but I thank you. You had a good conclusion about five minutes ago. Well, I have to answer questions here. That's all right. Okay. Thank you. You know what Theodore Roosevelt said with the two ingredients of a two-speech? No. Be sincere, be short, be seated. I am now two for three. Did I say Theodore Roosevelt? I meant Franklin. Yeah, I'm aware of that quote. Franklin said that, yeah. Your Honor, may I have maybe two and a half minutes to even it out slightly? Well, you know, I'm not playing an even-up game. I mean, the way, you know, I look at it is that this school has an obligation, and you've got the child fine provision. They know there are kids there that need help. It seemed to me in this particular case that it was certainly called to their attention. Just want to make sure. By the counselors and by the child's teacher, by the child's behavior in school, and, you know, nothing happens. Just want to make three quick points, Your Honor. There are two possible frameworks here. One is parent asks for. . . They're only getting $30,000. Maybe if the state felt that they were doing their job, they'd give them more money, you know. Your Honor, parent can propose two weeks of speech and language services. District can say no. Then we can have a hearing, and we know what we're arguing about. Or we can have a framework where, what did the district do wrong in the last couple of years? And that was a choice Congress made, and they chose the former. And there's a reason, because that's consistent with. . . Do you think Congress chose a course where if you had disabled kids in the class and there wasn't provision made by the administrators to help those kids, that somehow the fact that their parents didn't come forth and ask for help, that that ought to resolve the district? Is that what you're saying? Your Honor, I could be an. . . A lot of parents don't speak English. A lot of parents have problems even accepting that they've got a child that's got a problem. A lot of parents are out working 10, 12 hours a day, or both of them are, and they're hoping all this perhaps goes away. A lot of them maybe don't want to go talk to those administrators. Maybe they get put down. There's lots of reasons for it. But I could be a non-disabled child, Your Honor, and I could have a teacher that doesn't have a credential, and they're not a good teacher, and they're strung out on drugs. I don't have a claim. And that's not because it's fair. It's just that we've decided that education while practice type, you know, the negligence standard is unworkable in the school district environment because you'd have a claim for every student. So Congress made a choice. They said, what are we going to have? And they call it a due process hearing. And they call it procedural safeguards. This terminology is clearly consistent with the concept of a proposal and a refusal. You're telling me that the school doesn't have any obligation to find these kids? Absolutely. And if they don't, they will be audited by OCR and Department of Education. They can have their funding yanked. Absolutely what? That they do have that obligation. But that doesn't mean it's part of a due process hearing. Due process hearing is a subset of the various procedures in the statutory framework. The Department of Education audits these services all the time. If they come to Compton, they say you're not doing your job, we're going to yank your funding. So just because that's one remedy. How often does the Department of Education get there? All the time. In every school district. We have many school district clients. They're always auditing. How often do they come to Compton? They've been there. And I think Compton recently was found to be, I think very recently was found to be fully compliant now. And I know Your Honor is correct that there have been problems in the past. Lots of problems in the past. Huge problems in the past. I'm glad that they're in compliance. Two minor quick things before we depart, Your Honor. Let me ask you one other question which has worried me. If you look at the 300.507, which is the filing of a due process complaint, and you look at 2, section 2, we're now talking about the statute of limitations. It says, Due process complaint must allege a violation that occurred not more than two years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the due process complaint. Now, if that's the way the statute of limitations is written, why is it not the standard by which the whole of the due process ought to happen? And a finding due process problem or any other would be new or should have known, which is a negligence type standard. And I refuse to go to your standard that you have a negligence standard. I'm looking at the statute here. Why is that not a very good idea about what Congress, they didn't write the regulation, but what they're really suggesting about this? Well, it does talk about alleged action. Even that section. Well, I know. Alleged action is you didn't do anything. Well, I don't know if that would be, Your Honor, with respect. I'm not sure that would be inaction. You want it to be inaction, because it doesn't say inaction. No, but the real reason is, let's say, give a hypothetical. The school district issues an IEP. Well, once we're at the IEP state, we know where we are. I'm trying to establish this particular stat. Why would it not apply to your particular state? Well, I wanted to explain how it would apply. It would apply when a school district proposes or refuses something. The parent could say, oh, I never got notice of it. I didn't know you were doing that. That's where the new or should have known would come into play. So it doesn't necessarily mean that you knew or should have known that a child was eligible for services. It's a context of what is the due process hearing about. Okay, the due process hearing can be about reimbursement for a nonpublic school education. And this parent unilaterally withdrew the child. They have two years later from when they knew or should have known about the failure to reimburse that they would do it. So it's not a to me this is not a proof that this supports a negligence standard just because they said knew or should have known. And there's another argument that would support that, Your Honor, if you look to. Well, it sure tells us that Congress likes those words. Well, in 1415K5B, this is a critical section. In the context of disciplinary action, the statute says that there can be a, quote, basis of knowledge for the school district that the student is disabled and the student is entitled to certain rights pertaining to not being expelled. And when the Congress wanted to apply rights in the knew or should have known suspected knowledge context over there, they did. But they didn't choose to do it over here. Well, the reason that I bring that up is because it seems obvious that it has something to do with what the applicant is suggesting, because they don't stop at B3, as you do. They go to B6. And their whole argument is about a B6 argument that has nothing to do with B3. And right there under B6B, we're right there again with the statute of limitations. Knew or should have known. True. But B7, Your Honor, which is a requirement for whoever brings the due process hearing, it says what has to be in that due process notice. And one of the items is what is the proposed or refused action. And then in subject matter of hearing, which is in the 1415F3B, it says if it's not in your notice, it's not a hearing. So I think the better reading of the ‑‑ and I can tell you there is another reason. I don't want to bore the Court, but there's another reason. What's the ‑‑ what would be the meaning that would best promote the education of the student? Your Honor, we're all for whatever ‑‑ That's what it's all about, right? Well, I think what it's about, Your Honor, is what was the intent of the Congress. I think it's a fair argument on both sides. If we have enough money in this country to have this standard that was proposed by Appelli, that's fine. Let me tell you something. I have a very close friend. He's passed away. And he was a very important member of Congress. And he was a lawyer, too. And so one day I talked about a certain statute. And I said, well, Jim, what was your intent when you voted for that? What was the intent of Congress? And he looked at me and he said, well, what do you want to know that for? I said, well, that's all the judges talk about is the intent of Congress. And he said, well, how are you going to figure out an intent of 345 people? And I said, if you want to know what my intent was, my intent was to get the best deal that I could, vote for the best bill that was out there that complied with or satisfied what I thought was the right thing to do. That was my intent. So, you know, we talk about the first thing we learn in law school about these fictions. I remember that from law school, fictions. So there's a lot of fictions. I mean, the words are there. We can look at them and decide. But I think that the important thing is what is in the best interest of the disabled children. That's the overriding intent. And I'm sure that that was the intent of the people who voted for this. Let me give a citation, Your Honor. 124 F. 2nd. 611, which is the Ninth Circuit case from 1941, which stands for the proposition that school officials, there's a presumption that they will perform their duties and This is 1941. In an honest way. What? It's a presumption that school officials will perform their duties in an honest way. That was in response to Well, I graduated from high school in 1941, and I can say it was a good presumption. And I know it was L.A. Unified. I know it was L.A. Unified, Your Honor, because in the Aguirre case, which you so kindly concurred in, and I was here for the last go-round, you mentioned that. So we know you were an L.A. Unified student. And Mike, Garrett, and I, the 100th anniversary of the L.A. Unified, we represented Theodore Roosevelt High School at that event in the Coliseum. And they put our pictures right in the hallway of the Board of Education when you came in. But then they spent a lot of money putting up a new building, refurbished everything, and they lost our pictures, you know? They could have used that for the child find. For what? The money. Yeah. Oh, I don't think so. I don't think so. But we've got a search party out looking for them. I mean, there was about 50 pictures over there. One final point. One final point. In the transcript, and I don't think we launched it, we'd be happy to if it would help, Judge Matz and I believe trial counsel, which wasn't Mr. Crook, acknowledged that there was no precedent on this issue. And so, Your Honor, in fact, Judge Matz mentioned, if I remember correctly, an oral argument that he had been scouring to find an answer. And so I think it's correct that there is not, and I don't think it's because nobody's made, you know, considered making the argument. I think it's because there's never been an ALJ who's issued this kind of broad decision that has huge consequences to the schools out there. Yeah, well, you know, it's hard to beat Matz. Thank you. Thank you very much, Your Honor. Thank you. Thank you. Well, we'll take a five-minute break. A recess. Education code requires a recess.
judges: Pregerson, Smith, Collins